## No. 79SA520

## The People of the State of Colorado v. L. A. Jr.

(609 P.2d 116)

Decided March 31, 1980.

Robert L. Russel, District Attorney, Robert B. Harward, Deputy, for plaintiff-appellant.

Simons & Iuppa, Barney Iuppa, Jr., for defendant-appellee.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

In this interlocutory appeal in a juvenile delinquency proceeding, the People challenge the trial court's order suppressing incriminating statements made to the police by the respondent, L. A. Jr. We reverse.

While investigating a residential burglary, a police officer was informed that the respondent and another child had been seen lingering in the front yard of the house and ringing the doorbell prior to the burglary. Eleven days after the burglary, the officer met with respondent and his stepfather in their home. The officer had arranged the meeting through the stepfather. The child was 14 years old at the time of the meeting.

Prior to interrogating the child, the officer advised him and his stepfather of the rights described in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officer did not inform either the stepfather or the respondent of the statutory requirement that a parent, guardian, or legal custodian be present during an interrogation if statements or admissions made as a result of the interrogation are to be admissible in evidence. That requirement is found in section 19-2-102(3)(c)(I), C.R.S. 1973 (now in 1978 Repl. Vol. 8), which provides in pertinent part: "No statements or admissions of a child made as a result of interrogation of the child by a law enforcement official concerning acts alleged to have been committed by the child which would constitute a crime if committed by an adult shall be admissible in evidence against the child unless a parent, guardian, or legal custodian of the child was present at such interrogation and the child and his parent, guardian, or legal custodian were advised [of certain specified rights] . . . ."

The stepfather[1] left the room at his own instance before the questioning began. Initially, the child denied any knowledge of the incident. As the officer was leaving, he said he did not believe the child; that he would investigate the matter further; and that, if he found information implicating the child, he would arrest him. The respondent began to cry and then confessed. Following the confession, the officer summoned the stepfather and the child repeated his confession.

The trial court found that the interrogation was "quasi-custodial" and concluded that section 19-2-102(3)(c)(I) was applicable. The court also concluded that, because the child was not advised of the right to have a parent present during the interrogation,[2] he could not have made a knowing waiver of that right. The court then suppressed the confession.

██ The purpose of section 19-2-102(3)(c)(I) is to provide assistance to the child in determining whether to exercise or to waive the privilege against self-incrimination and right to counsel, which have their origin in the Fifth and Sixth Amendments to the Constitution of the United States. *See People v. McAnally*, 192 Colo. 12, 554 P.2d 1100 (1976); *People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973); *People in the Interest of L.B.*, 33 Colo. App. 1, 513 P.2d 1069 (1973). We have held that section 19-2-102(3)(c)(I) applies only when a child is in temporary custody or under detention, as those terms are used in the Children's Code.[3] *People v. Maynes*, 193 Colo. 111, 562 P.2d 756 (1977). It follows that the statute does not apply to statements or admissions volunteered by a child to a law enforcement official in a setting where there is no constraint on the child's freedom of action. *See id.*

██ Insofar as relevant here, statutory authorization for a law enforcement officer to take a child into temporary custody is limited to situations "[w]hen there are reasonable grounds to believe that he has committed an act which would be a felony . . . if committed by an adult."

---

[1] The record reflects that the parties recognized a question whether a stepfather is a "parent, guardian, or legal custodian" of the child within the meaning of section 19-2-102(3)(c)(I). That question was not made an issue in proceedings in the trial court, and we do not consider it here. *Cf. People v. Maes*, 194 Colo. 235, 571 P.2d 305 (1977) (social service caseworker does not satisfy the requirement). *People v. McAnally*, 192 Colo. 12, 554 P.2d 1100 (1976) (counselor employed by department of institutions, to which the child had earlier been committed, does not satisfy the requirement).

[2] The trial judge characterized this as a "right" of the child. More precisely, the statute makes a statement inadmissible in evidence if a parent or other representative was not present during the interrogation which resulted in the statement. We have never had occasion to consider whether the consequence of inadmissibility can be avoided by waiver. We express no opinion on that question now.

[3] Grounds for taking a child into temporary custody are specified in section 19-2-101(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). Statutes defining detention; dealing with the circumstances in which detention is appropriate; obtaining authorization for detention; and specifying certain characteristics of detention are sections 19-1-103(11), 19-2-102(3)(b), 19-2-102(4), C.R.S. 1973 (now in 1978 Repl. Vol. 8) and 19-1-103, C.R.S. 1973 (1978 Repl. Vol. 8).

Section 19-2-101(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8). At the time the officer began questioning the child in this case, the officer did not have sufficient information to constitute reasonable grounds to believe the child had committed the offense under investigation. The officer acknowledged that to be the case and was not purporting to place the child in temporary custody. Nor was the child in detention. *See* section 19-1-103(11), C.R.S. 1973 (now in 1978 Repl. Vol. 8). Thus, section 19-2-102(3)(c)(I) is not applicable. *People v. Maynes, supra.*

The trial court characterized the situation as "quasi-custodial interrogation," which connotes that some constraints existed on the child's freedom of action during the questioning. Although this suggests questions with respect to whether the interrogation of the child was consistent with his constitutional rights,[4] those questions were not raised by the motion to suppress evidence and were not addressed by the trial court. Therefore, we do not consider them here.

■ The motion to suppress also contains a challenge to admissibility of the child's statements on the ground that they were not voluntarily made. Although this issue was not urged at the hearing, the record does not reflect that it was abandoned. The trial court did not reach the question. A statement must have been voluntarily made or its admission in evidence in a juvenile delinquency proceeding would violate the child's right to due process of law. *See, e.g., Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Parada,* 188 Colo. 230, 533 P.2d 1121 (1975) (each of these cases relates to adult criminal proceedings); *see also In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (certain fundamental rights are applicable in juvenile delinquency proceedings as a requirement of due process of law). On remand the trial court should consider whether the statements sought to be suppressed were voluntary.

---

[4] The circumstances under which adults may be stopped by law enforcement officers in absence of probable cause to arrest, and the nature of the restraints and the extent of the questioning which are constitutionally permissible incident to such stops, have been the subjects of extensive consideration in the federal courts and in this court. The seminal cases are *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). We have never had occasion to consider the extent to which the legal principles which have been developed in those cases might be applicable to juveniles. Due process of law requires some of the rights applicable in adult criminal proceedings to be applied in juvenile delinquency proceedings. *E.g., In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (notices of charges, right to counsel, privilege against self-incrimination, and right to confrontation and cross-examination). But not all such rights need be applied in juvenile delinquency proceedings in order to provide due process of law. *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (right to jury trial). It has been suggested that, in police investigations into criminal matters, juveniles should receive at least the same safeguards available to adults in pretrial investigations (*e.g.,* stop and frisk) and in questioning. *See* Standard 3.2 at page 6, Juvenile Justice Standards Relating to Police Handling of Juvenile Problems (approved 1979), and the commentary to that standard at page 54.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

CHIEF JUSTICE HODGES and JUSTICE ROVIRA concur in the result.

JUSTICE GROVES does not participate.