The PEOPLE of the State of Colorado, Appellant,

In the Interest of S.J., a child, Appellee,

and concerning R.G., Appellee.

No. 89SA28.

Supreme Court of Colorado, En Banc.

Sept. 18, 1989.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., and Joan C. White, Deputy Dist. Atty., Denver, for appellant.

David F. Vela, Colorado State Public Defender, and Diana M. Richett, Deputy State Public Defender, Denver, for appellee S.J.

Appellee R.G. not appearing.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal brought by the prosecution from an order suppressing evidence obtained by police officers in a search of a bag belonging to S.J., a juvenile,[1] at Stapleton International Airport. C.A.R. 4.1.[2] The trial court found that the police properly approached S.J. at the airport and that S.J. voluntarily consented to a search of her bag, which disclosed a quantity of cocaine in a smokable form known as "crack." However, relying on *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971), the trial judge ordered the

1. At the time of the search, S.J. was 17 years and one-month old.

2. C.A.R. 4.1 provides, in pertinent part:
   (a) **Grounds.** The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim.P. 41(e) and (g) and Crim.P. 41.1(i) made in advance of trial by the defendant for return of property and to suppress evidence or granting a motion to suppress an extra-judicial confession or admission; provided that the state certifies to the judge who granted

such motion and to the supreme court that the appeal is not taken for purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.

C.A.R. 4.1 applies to an interlocutory appeal by the prosecution in a delinquency proceeding. *People in the Interest of M.R.J.*, 633 P.2d 474, 475 n. 1 (Colo.1981). *See also* § 19–2–602(2), 8B C.R.S. (1987 Supp.); § 16–12–102(2), 8A C.R.S. (1986).

cocaine suppressed because the voluntary consent of a parent, guardian, or other appropriate adult was not obtained. The only issue presented is whether a juvenile, who is not in custody or detention, may ever validly consent to a search of the juvenile's personal belongings, without the presence and contemporaneous voluntary consent of an appropriate adult. Because we conclude that a juvenile may consent, we reverse.

### I.

At about 11:00 a.m. on October 13, 1988, Lieutenant O'Dell of the Denver Police Department, and head of the Stapleton Narcotics Unit, received a telephone call from Detective Roy Kaiser, a Los Angeles police officer working with the Ontario Airport Narcotics Unit in Ontario, California. Kaiser told O'Dell that a Continental Airlines ticket counter employee had notified Kaiser that a black female had purchased a one-way ticket to Billings, Montana with cash, by way of Stapleton International Airport, under the name of "Regina Sims." The employee related that "Regina Sims" appeared nervous, and had only a single carry-on bag for luggage. Detective Kaiser described "Regina" as tall and slim, wearing a gray or white jogging suit with blue on the sleeves, and holding a black carry-on bag. Kaiser also told O'Dell that "Regina" would arrive at Stapleton at about 10:25 a.m., and that she was scheduled to fly out at 12:25 p.m. for Billings.

Based on past experience and training, O'Dell suspected that "Regina Sims" might be a drug courier, and he decided to attempt to question her. His suspicion was based on the fact that "Regina" was leaving an area known as a source for illegal drugs, with a one-way ticket paid for in cash, and entering a drug importation region. She was travelling with only one carry-on bag, and she had appeared nervous when purchasing her ticket.

O'Dell and five other members of the narcotics unit (all in plainclothes) approached a black female matching the description of "Regina Sims" (later identified as S.J.), who was sitting by herself in the waiting area for Gate C–3 at the airport. O'Dell identified himself as a police officer, and showed S.J. his Denver Police Department badge and identification card. According to O'Dell, he said, "I'm a police officer. Would you mind if I talk to you for a moment?" S.J. replied, "No, go ahead." At this time, O'Dell was in front of S.J., another officer was sitting two seats to the side of her, and three others were standing 20–30 feet behind her.

S.J. stated that she had flown in from Los Angeles. When O'Dell asked if she minded if he looked at her airline ticket, she responded by producing it. The ticket was one-way to Billings, issued to "Regina Sims," and indicated that it had been paid for in cash. The point of departure was Ontario, not Los Angeles. When O'Dell handed the ticket back, he asked S.J. if she had any identification. She replied that she had none. According to O'Dell, S.J. became extremely nervous, and would not answer him, when asked if "Regina Sims" was her real name.

Lieutenant O'Dell stated that he told her about the call from Kaiser "about a suspicious party going from Denver to Billings." He then testified as follows at the suppression hearing:

> I asked her if she would mind if we searched her carry-on bag. I also asked her if she had any checked luggage, which she stated she did not. I asked her if we could search her carry-on bag. She stated at that point in time that we could. Before searching it, I advised her that she did not have to allow us to search that. If she didn't want us to search it, that we would not search it. At that point in time she said, "No, go ahead."

If she had refused to permit the search, O'Dell stated that he would have allowed S.J. to leave, but would have detained her bag long enough for a narcotics dog to examine it. O'Dell directed Detective Peterson, who was sitting two chairs to the side of S.J., to search the carry-on bag. Peterson opened the bag, removed and unrolled a pair of jeans, and found a large

plastic bag containing what appeared to be crack cocaine.

S.J. was then placed in custody. Because S.J. was seventeen years old, the prosecution filed a petition in delinquency against her. The petition alleged, inter alia, that, on or about October 13, 1988, S.J. knowingly possessed cocaine, which would constitute a felony if she were an adult.[3]

S.J. filed a "Motion to Suppress Evidence and Statements," relating to the contents of the plastic bag found by Peterson, as well as certain statements she made after being taken into custody. The prosecution conceded that S.J.'s statements made during custodial interrogation were inadmissible, but contended that the physical evidence was obtained pursuant to a valid consent given by S.J. before she was placed in custody.

S.J. testified at the hearing. She stated that three police officers approached her at the airport, asked her if she was "Regina Sims," and requested her airline ticket. She said one of the officers asked her if her carry-on bag belonged to her. She answered "Yes," and the officer directed another officer to search her bag. S.J. asserted that no one asked her for permission to search the bag, and no one told her that she could refuse the search. She testified that she was "scared" during the encounter, did not feel free to leave or to decline to answer questions, and did not know she could refuse to let the police search her bag.

After the hearing, the trial judge issued findings of fact and conclusions of law. She found that if S.J. had initially refused to speak with O'Dell, she would have been free to go her way. Further, if she had refused to allow the search of her bag, S.J. would have been permitted to leave, but her bag would have been retained.[4] The trial court concluded that the prosecution had proved, by clear and convincing evidence, that S.J. had "consented to the search of the carry-on bag, freely, intelligently and voluntarily." Nevertheless, because no "parent, guardian, legal or physical custodian" was present when S.J. consented, the court held that *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971), required suppression of the fruits of the search.

On this interlocutory appeal, S.J. does not dispute any of the findings made by the trial judge, either factual or legal. S.J. argues that, under *Reyes*, a juvenile may never validly consent to a search of the juvenile's personal belongings, absent the presence and voluntary consent of the juvenile's parent, guardian, or physical or legal custodian. S.J. reads our decision in *Reyes* too broadly.[5]

## II.

In *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971), we held that a minor, who had been placed in custody, and his father had validly consented to a warrantless search of the minor's automobile. The voluntariness of the consent was to be determined "by the totality of the circumstances surrounding the purported waiver." 174 Colo. at 381, 483 P.2d at 1344. However, we continued:

> The same test is applicable to the validity of the search whether the consenting party is an adult or a juvenile, with the one exception noted in the Children's

3. Section 18-18-105(1)(a), 8B C.R.S. (1987 Supp.). The petition also alleged, in Count II, a "violation" of section 18-18-107, 8B C.R.S. (1986). The prosecution dismissed the second count because it concluded that section 18-18-107 was a sentence enhancing provision for adults, inapplicable to juveniles.

4. The trial court also found that the officers were justified in making an "investigatory stop" pursuant to *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). The trial court's opinion does not explicitly state at what point the "stop" began. We need not resolve the issue of if and when an investigatory stop was made in this case, since we conclude that S.J. was not in custody until after the cocaine was found.

5. S.J. also argues that our decision in *People in Interest of S.J.F.*, 736 P.2d 29, 31 (Colo.1987), supports her position that a minor may not validly consent to a search, without the concurrence of a parent, guardian, or legal custodian. *S.J.F.* actually involved a search incident to arrest, not a consensual search, and is not controlling here.

Code. 1967 Perm.Supp., C.R.S.1963, 22–2–2(3)(c). That is, a parent, guardian, or legal custodian of the child must be present, and freely and intelligently give his consent. Although the cited statute refers specifically to *statements and admissions,* and requires that the interrogating officer afford both the juvenile and his parent, guardian or legal custodian full Fifth Amendment protection, we recognize that the juvenile is entitled to comparable protection in connection with the waiver of his Fourth Amendment rights.

174 Colo. at 381–82, 483 P.2d at 1344. The reference to section 22–2–2(3)(c) of the prior Children's Code makes it clear that the additional requirement of parental consent is statutory, and not a command of the federal or state constitutions. Prior section 22–2–2(3)(c) is now codified at section 19–2–210(1), 8B C.R.S. (1987 Supp.).[6] The immediate statutory predecessor to current section 19–2–210(1) was former section 19–2–102(3)(c)(I), 8B C.R.S. (1986). Except for minor changes not material here, the provisions are the same.

In *People v. L.A.,* 199 Colo. 390, 392, 609 P.2d 116, 118 (1980), we held that former section 19–2–102(3)(c)(I) only applied when the child was in temporary custody or detention, as defined in the Children's Code.[7] We concluded that "the statute does not apply to statements or admissions volunteered by a child to a law enforcement official in a setting where there is no constraint on the child's freedom of action." 199 Colo. at 392, 609 P.2d at 118. For the same reason, we also believe that section 19–2–210(1) is inapplicable to a consensual search in a noncustodial setting.

■ Detective O'Dell testified, and the trial court held, that before the search, O'Dell did not have sufficient grounds to place S.J. in custody. The trial court also concluded that, prior to the finding of the cocaine, S.J. was at all times free to leave, and did not have to talk to the police. Under these circumstances, S.J. was not in custody when she gave her consent to search her carry-on bag. *See People v. L.A.,* 199 Colo. at 392, 609 P.2d at 118.

■ Because section 19–2–210(1) does not apply since S.J. was not in custody when she consented to the search, we conclude that the proper test to measure the validity of a consent to search given by a juvenile is contained in sections 19–2–208 and 19–2–209(4), 8B C.R.S. (1987 Supp.).[8]

6. Section 19–2–210(1), 8B C.R.S. (1987 Supp.) provides, in pertinent part:

No statements or admissions of a juvenile made as a result of the interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him in a court of law, of his right to the presence of an attorney during such interrogation, and of his right to have counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence even though the juvenile's parent, guardian, or legal or physical custodian was not present.

7. Grounds for taking a juvenile into temporary custody are defined by section 19–2–201(1), 8B C.R.S. (1987 Supp.):

A juvenile may be taken into temporary custody by a law enforcement officer without order of the court when there are reasonable grounds to believe that he has committed a delinquent act.

Detention is defined as "the temporary care of a child who requires secure custody in physically restricting facilities pending court disposition or an execution of a court order for placement or commitment." § 19–1–103(10), 8B C.R.S. (1987 Supp.). It is undisputed that S.J. was not in detention before or during the search of her bag.

8. Section 19–2–208 provides, in pertinent part:

In determining the voluntariness of a juvenile's consent to a search or seizure, the court shall consider the totality of the circumstances.

Section 19–2–209(4) states:

Evidence which is obtained as a result of a confession voluntarily made in a noncustodial setting shall not be suppressed by the court in a delinquency proceeding if it is otherwise admissible.

We hold that the voluntariness of a juvenile's consent to search in a noncustodial setting is to be determined by the same standards applicable to an adult. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Savage,* 630 P.2d 1070, 1074 (Colo. 1981). The presence or absence of a parent, guardian, or legal or physical custodian, is only one factor to be considered in making the determination of voluntariness. Because the trial court applied a per se rule of exclusion to evidence obtained by consent given outside the presence of a parent or guardian, we reverse the suppression order and remand for further proceedings consistent with this opinion.