The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

In the Interest of J.C.,
Juvenile–Appellee,

and Concerning R.B., Respondent–
Appellee.

No. 92SA350.

Supreme Court of Colorado,
En Banc.

Feb. 8, 1993.

Alexander M. Hunter, Dist. Atty., Twentieth Judicial Dist., William F. Nagel, Appellate Deputy Dist. Atty., Steven Louth, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

Lindasue Smollen, Kevin C. Paul, Smollen & Rockwell, Boulder, for juvenile-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

In the present case, a police officer made an investigatory telephone call to a juvenile suspect in a robbery. Holding that such a call constituted an illegal custodial interrogation, the district court suppressed all incriminating statements made by the juvenile during the call in his subsequent juvenile delinquency proceeding for theft. The People challenge the district court's suppression in this interlocutory appeal, brought pursuant to section 19–1–109, 8B C.R.S. (1992 Supp.), section 16–12–102(2), 8A C.R.S. (1992 Supp.), and C.A.R. 4.1. Because we find that a telephone call is not a custodial situation, even when involving a juvenile, we reverse the ruling of the district court.

## I.

In March 1992, a bicycle was reported as stolen to the Boulder Police Department. As part of his investigation of the theft, Detective Fred Patterson contacted by telephone several juveniles he suspected may have been involved, including the one involved in this case, J.C. With each juvenile, the telephone contact was made without the presence of a parent, guardian or other responsible adult.

After questioning J.C. over the phone, Detective Patterson contacted him at home. In the presence of his mother and older brother, J.C. refused to speak further with the officer. J.C. was then taken into custody and charged with theft and conspiracy to commit theft in a juvenile proceeding.

J.C. moved to have his telephone statements suppressed as being in violation of section 19–2–210 of the Colorado Children's Code. The statute provides in part as follows:

No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him in a court of law, of his right to the presence of an attorney during such interrogation, and of his right to have counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence even though the juvenile's parent, guardian, or legal or physical custodian was not present.

§ 19–2–210(1), 8B C.R.S. (1992 Supp.). J.C. asserted that the statements were made outside the presence of any responsible adult,[1] and therefore were inadmissible under the statute.

Confessing to some confusion as to the application of the statute, the district court requested that the attorneys for each side submit briefs on the specific issue of "Whether or not section 19–2–210 applies to non-custodial situations." On June 12, 1992, the district court granted J.C.'s motion to suppress on the basis that the tele-

---

**1.** The term "responsible adult" is used in this opinion to refer to the statutory language "par-

ent, guardian, or legal or physical custodian of the juvenile."

phone call constituted custodial interrogation, which was illegal since the requirement that a responsible adult be present was not met. The People moved for reconsideration of the court's order on July 14, 1992, arguing that the motion to suppress was granted on different grounds than briefed. Reiterating and expanding upon its prior reasoning, the district court denied the motion on August 17, 1992. The People then filed an interlocutory appeal before this court on August 26, 1992.

The resolution of this case depends on the boundaries of the definition of custodial interrogation as applied to juveniles, which have not yet been set forth either by this court or by the United States Supreme Court. To resolve this issue, we will examine past custodial interrogation cases, both adult and juvenile. In doing so, we find that the age of the juvenile, standing alone, is not determinative to a finding of custody in every situation, as the district court and J.C. would seem to have us hold. Rather, the definition of custody in the context of adults—that there is a significant deprivation of one's freedom of action—is still applicable to the analysis. Since we do not find such constraints to exist here, we reverse the ruling of the district court.

## II.

Before analyzing the definition of custody in the context of juvenile proceedings, however, we must first address a threshold issue of jurisdiction. J.C. contends that the interlocutory appeal was not timely filed by the People, and as a result this court has no jurisdiction over the appeal and it should be dismissed. *See People v. Donahue,* 750 P.2d 921, 922 (Colo.1988) ("Failure to file a timely appeal is a jurisdictional defect"); *Clasby v. Klapper,* 636 P.2d 682, 684 (Colo. 1981) (same). Whether or not jurisdiction is proper will be determined by examining the relevant statutes and the time limitations imposed therein.

Section 16–12–102(2), 8A C.R.S. (1992 Supp.) provides in part that:

The prosecution may file an interlocutory appeal in the supreme court from a ruling of the trial court ... granting a

motion to suppress an extrajudicial confession or admission if the prosecution certifies to the judge who granted such motion and to the supreme court that the appeal is not taken for the purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.

The time limit for such an appeal to be taken is set forth in C.A.R. 4.1(b), which states in part: "No interlocutory appeal shall be filed after ten days from the entry of the order complained of."

■ J.C. argues that the appeal should have been filed after the suppression ruling itself, rather than after the ruling on the People's motion to reconsider. Therefore, he contends, the filing was too late for consideration by this court. He also asserts that the motion to reconsider was used by the People purely as a device by which to extend the time under which they may bring an interlocutory appeal. If true, such an attempt to circumvent the appeals process would be impermissible. *See Donahue,* 750 P.2d at 922–23 (court disapproved of prosecution tactic of voluntarily dismissing charges in effort to avoid effect of untimely interlocutory appeal).

In examining the facts of the situation, however, we find that there were significant grounds for bringing a motion to reconsider and that it was not merely a prosecutorial fiction. The trial court clearly set forth the following issue which was briefed before the suppression ruling was made and on which the ruling supposedly was to be based: "Whether or not section 19–2–210 applies to non-custodial situations." The question implicitly assumed that the telephone call was a non-custodial situation. It was this issue that was briefed by the People.

It was not this issue, however, on which the trial court based its decision to suppress the statements. Instead, the court found that the telephone call constituted custody, thereby invoking the protections of section 19–2–210. The question of whether the telephone call could be considered custody had not been addressed by the People, since it was outside the scope of

the initial issue. In the motion to reconsider, the People then included a comprehensive discussion of the law of custody.

The law allows a trial court to reconsider suppression orders. We have stated that, "It would make little sense to hold that if a [trial] judge ... perceived that a palpable error had been committed in the resolution of a pretrial motion, he nonetheless could take no measures to correct it." *People v. Lewis*, 659 P.2d 676, 680 (Colo.1983); *see also People v. Weller*, 679 P.2d 1077, 1080–81 (Colo.1984). Thus, "A pre-trial ruling on a motion to suppress does not necessarily bind the trial judge and under certain circumstances ... the trial court has a duty to reconsider de novo the issue of suppression." *Gibbons v. People*, 167 Colo. 83, 86, 445 P.2d 408, 409 (1968). If a judge may reconsider an earlier ruling, it is only logical and equitable that his or her modified ruling may be appealed subject to the time limitations of C.A.R. 4.1. Since the appeal was brought within ten days of the modified ruling, we therefore find jurisdiction to hear this case.

### III.

Having found jurisdiction, we now turn our attention to the question of custody as it involves juveniles. We begin our analysis by examining the statutory language of section 19–2–210, which has been set forth above.

### A.

This statute, by its plain language, seeks to exclude statements or admissions made only as a result of custodial interrogation without the presence of a responsible adult.

Clearly, it does not apply to non-custodial situations. This premise is supported by the history of the statute. The predecessor to the current version of section 19–2–210 provided that statements or admissions made as a result of interrogation, which was not specified as necessarily being custodial, were not admissible if a responsible adult was not present.[2] § 19–2–102(3)(c)(I), 8B C.R.S. (1986 Repl.Vol.) (repealed 1987). This provision was uniformly interpreted as applying only when the juvenile was in temporary custody or under detention, as those terms are defined in the Children's Code.[3] *See, e.g., People in Interest of G.L.*, 631 P.2d 1118, 1120 (Colo.1981); *People v. L.A.*, 199 Colo. 390, 392, 609 P.2d 116, 118 (1980).

The reasoning behind that interpretation is that the statute is a codification of the *Miranda*[4] requirements, as extended to juveniles, with the added requirement that an adult be present. *People in Interest of M.R.J.*, 633 P.2d 474, 476 (Colo.1981). Although the United States Supreme Court has not specifically applied *Miranda* safeguards to the juvenile process, the Colorado General Assembly enacted section 19–2–102(3)(c)(I) for that very purpose. *G.L.*, 631 P.2d at 1120 n. 6. Thus the statute requires that the juvenile and the responsible adult be made aware of the juvenile's right against self-incrimination and right to counsel during interrogation. § 19–2–210(1). Grounded in the Fifth Amendment, these identical rights are held by adults and protected by the *Miranda* advisements. It is undisputed that the *Miranda* safeguards are not triggered unless there is custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612,

**2.** The relevant portion of section 19–2–102(3)(c)(I) reads as follows:
> No statements or admissions of a child made as a result of interrogation of the child by a law enforcement official concerning acts alleged to have been committed by the child which would constitute a crime if committed by an adult shall be admissible in evidence against that child unless a parent, guardian, or legal or physical custodian of the child was present at such interrogation....

**3.** Section 19–2–201(1), 8B C.R.S. (1987 Supp.), stated, "A juvenile may be taken into temporary

custody by a law enforcement officer without order of the court when there are reasonable grounds to believe that he has committed a delinquent act."

Section 19–1–103(10), 8B C.R.S. (1987 Supp.), defined detention as "the temporary case of a child who requires secure custody in physically restricting facilities pending court disposition or an execution of a court order for placement or commitment."

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

16 L.Ed.2d 694 (1966). Because section 19–2–210 seeks to protect the same interests of a juvenile as *Miranda* does for adults, we hold that the safeguards of that statute—the embodiment of the *Miranda* protections—likewise apply only in custodial situations. *Cf. People v. Lee*, 630 P.2d 583 (Colo.1981) *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982) (*Miranda* custodial interrogation analysis applied to juvenile proceeding).

## B.

The issue that arises now—the one that is central to the analysis in this case—is whether or not the phone call constituted custodial interrogation, such that section 19–2–210 is triggered. Therefore, we must examine the circumstances of this case to determine if there is both custody and interrogation.

 It is not disputed that an interrogation was conducted by Detective Patterson. An interrogation under *Miranda* is defined as any words or actions on the part of the police officer that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *People v. Thomas*, 839 P.2d 1174, 1178 (Colo.1992); *Lee*, 630 P.2d at 589 (this standard applied in juvenile case). As part of his investigation, Detective Patterson asked J.C. questions in order to narrow his field of suspects. An interrogation conducted without custody is not illegal and the answers received as a result of that interrogation are admissible, as long as they are voluntary. If there is custody, however, other considerations come into play.

 The next step, then, is to ascertain how custody is defined as it applies to juveniles. As applied to adults, the determination of when custody has been imposed turns on the objective assessment of whether a reasonable person in the suspect's position would consider oneself deprived of his or her freedom of action in any significant way. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *Thomas*, 839 P.2d at

1178; *People v. Hamilton*, 831 P.2d 1326, 1330 (Colo.1992). The language contained in the above caselaw has been mirrored in a juvenile case and found to be applicable therein. *Lee*, 630 P.2d at 588. In addition, we have said that the protections of section 19–2–210 do not apply "where there is no constraint on the child's freedom of action." *People in Interest of S.J.*, 778 P.2d 1384, 1387 (Colo.1989); *L.A.*, 199 Colo. at 392, 609 P.2d at 118. Because these tests for custody of both the adult and juvenile are strikingly similar, we find that the analysis for custody of an adult, as it has been thoroughly developed over the years, also applies to the custody of a juvenile.

 In making the determination of when a person has been significantly deprived of his or her freedom of action, a court must examine the totality of the circumstances surrounding any interrogation, which has concededly been found here. Factors that a court may consider include, but are not limited to, the following:

[T]he time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*Thomas*, 839 P.2d at 1178; *People v. Thiret*, 685 P.2d 193, 203 (Colo.1984). In the juvenile situation, the court may consider whether the parents were present or had knowledge of the interrogation.

In its initial ruling, the district court correctly identified this totality-of-the-circumstances test as being applicable to the analysis of the present case. The court also noted that the age and experience of the juvenile " 'should weigh heavily in a consideration of the circumstances' of a confession." *Taylor v. United States*, 380 A.2d

989, 992 n. 6 (D.C.1977). Although the court stated that it weighed the totality of the circumstances in making its determination of custody, that declaration is not supported by the record. Instead, it is evident that the court focused its complete attention on J.C.'s age as the determinative factor in the finding of custody.

We agree that the age of the person interrogated is a factor to be considered in a totality-of-the-circumstances situation; however, we do not find it to apply to the exclusion of all other factors in the weighing process. It is clear that a person lacking age and experience, when confronted by a police officer, will sustain some sense of fear. We have previously found, however, that, despite a juvenile's fear and ignorance as to her ability to cease the questioning and leave, custody had not been imposed. *S.J.*, 778 P.2d at 1386–87. This is due to the rule that the determination of custody does not turn on the subjective beliefs of the accused or the police officer. *People v. Cleburn*, 782 P.2d 784, 786 (Colo.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990); *Thiret*, 685 P.2d at 201. Thus J.C.'s supposed fear and awe of authority, which was assumed by the court but never stated by J.C., will not necessarily prove determinative to a finding of custody.

In examining all of the circumstances surrounding the interrogation, therefore, we find, as we have done previously, that a telephone call does not constitute custodial interrogation. *See People v. Corley*, 698 P.2d 1336, 1339 (Colo.1985); *see also People v. Brewer*, 720 P.2d 583, 586 (Colo.App.1985). This finding is derived from the principle that when the interrogating officer is not in the physical presence of the accused, that officer cannot exert immediate control over the actions of the accused such as to trigger *Miranda* concerns. *See Brewer*, 720 P.2d at 586; *United States v. Mesa*, 638 F.2d 582, 587–88 (3d Cir.1980) (opinion of Seitz, C.J.). Thus, in *Brewer*, the fact that, when the defendant was contacted by telephone, the house in which he was hiding was surrounded by a heavily armed special services unit was not enough to allow a finding

of custody. *Id.*, 720 P.2d 583. Likewise in *Mesa*, a telephone call under the circumstances of the surrounding by thirty officers of the hotel in which the defendant had barricaded himself did not provide enough immediate control over the defendant to constitute custody. *Id.*, 638 F.2d 582.

In the present case, Detective Patterson could not exercise immediate control over J.C. He could not force J.C. to submit to questioning such that J.C. had no choice but to listen. As a result, the interrogation conducted by the detective was not custodial. At all times, J.C. could have hung up the telephone. It is not reasonable, even for a twelve-year old, to believe that a police officer will be able to directly control one's actions over the telephone. In addition, the court did find that the detective's demeanor was polite and his questioning was not overtly coercive. Because this was not a custodial interrogation, we reverse the district court ruling and hold that section 19–2–210 is not applicable to J.C.'s situation. Thus, J.C.'s statements will not be automatically excluded under section 19–2–210. This case is remanded for further proceedings consistent with this opinion.