JUSTICE HOOD, dissenting.
¶44 The adage about bad facts sometimes making bad law seems to hold true today. By extending plain error review to unpreserved suppression claims, the majority essentially nullifies a long-standing and controlling rule of criminal procedure. Moreover, in doing so, it undermines the policy objectives of the rule and places an unreasonable burden on trial courts and the court of appeals. Therefore, I respectfully dissent.
I. Analysis
A. Crim. P. 41(g) Requires Motions Like the One Here to Be Filed Before Trial
¶45 Since 1970, criminal defendants in Colorado have been required by rule to challenge involuntary confessions or admissions before trial:
A defendant aggrieved by an alleged involuntary confession or admission made by him, may make a motion under this Rule to suppress said confession or admission. The motion shall be made and heard before trial unless opportunity therefor did not exist or defendant was not aware of the grounds for the motion ....
Crim. P. 41(g) (emphasis added). The trial court "may" address such a motion at trial, but its decision in that respect is purely discretionary. See id.
¶46 For many years, we rejected efforts by criminal defendants to raise suppression issues on appeal when the issues were not properly raised before the trial court. See, e.g. , People v. L.A. , 199 Colo. 390, 609 P.2d 116, 118-19 (1980) (remanding for further proceedings to determine whether a juvenile-defendant's statements were voluntary because, though the issue was raised in the motion to suppress, the trial court did not make findings on this question during the suppression hearing); People v. Cobb , 690 P.2d 848, 853 (Colo. 1984) (refusing to consider the merits of a defendant's claim that his Fifth Amendment rights were violated because the argument "was not raised in [the] motion to suppress the evidence, nor was it argued before the trial court");
*1084 People v. Gouker , 665 P.2d 113, 117-18 (Colo. 1983) (rejecting the defendant's argument that he was arrested pursuant to an invalid warrant because he failed to contest its validity at the suppression hearing). While these cases do not rely explicitly on Crim. P. 41, they demonstrate how entrenched this form of procedural default is.
B. Crim. P. 41 Serves Many Important Policy Objectives
¶47 Presumably, this rule, and caselaw to the same effect, has endured because there are so many compelling reasons for it. See 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.1(a) (5th ed. 2014). ("[T]here are many valid reasons underlying the practice of requiring pretrial motions, which doubtless explains why so many jurisdictions now subscribe to that approach."). Requiring pretrial litigation of suppression issues helps to:
• prevent "the waste of prosecutorial and judicial resources occasioned by [trial] preparation," United States v. Mauro , 507 F.2d 802, 806 (2d Cir. 1974) ; accord LaFave, supra ;
• permit the defendant, when suppression is denied, to "plead guilty and gain whatever concessions might be obtained by so pleading without causing the commencement of a trial" or change trial strategy, LaFave, supra ;
• "permit the government to change the theory of its case, to develop or place greater reliance upon untainted evidence or otherwise to modify its trial strategy [in the event of an adverse ruling]," United States v. Sisca , 503 F.2d 1337, 1348 (2d Cir. 1974) ;
• allow the prosecution to pursue an interlocutory appeal of an adverse pretrial suppression ruling before jeopardy attaches, People v. Traubert , 199 Colo. 322, 608 P.2d 342, 348 (1980) ("Since the prosecution is precluded from placing a defendant in double jeopardy after a verdict has been rendered, its only meaningful avenue of appeal must be found in a pre-judgment proceeding.");
• "avoid interruptions of a trial in progress with auxiliary inquiries" and ensure the jury remains focused on the issues presented at trial, United States v. Mauro , 507 F.2d 802, 806 (2d Cir. 1974) ;
• prevent "serious personal inconvenience to jurors and witnesses which would result from interruptions and delay once the jury had been selected and the trial had commenced," id. ; and
• "avoid the necessity of declaring a mistrial because the jury has been exposed to unconstitutional evidence, with resulting repetitive litiga[t]ion," State v. Lawrence , 260 La. 169, 255 So. 2d 729 (1971).
¶48 Similarly, we insist that motions to suppress "should state with reasonable specificity the legal grounds upon which the motions are based." People v. Jansen , 713 P.2d 907, 912 n.8 (Colo. 1986). We require such specificity to ensure "the prosecution [is] on notice of the contentions it must be prepared to meet at a suppression hearing and to inform the court of the issues to be decided." Id. After all, when considering a motion to suppress based on the alleged involuntariness of the confession, the trial court "must make sufficiently clear and detailed findings of fact and conclusions of law on the record to permit meaningful appellate review." People v. McIntyre , 789 P.2d 1108, 1110 (Colo. 1990). Without factual determinations from the trial court, "appellate review may be impossible, requiring remand for further findings." Id.
¶49 In sum, Crim. P. 41(g) serves an essential role-it ensures that the parties and trial courts do not waste time and resources pursuing claims that could be resolved in pretrial proceedings.
C. There Is No Constitutional Right to a Hearing on the Voluntariness of a Confession, in the Absence of Objection
¶50 What, then, is the legal basis for deviating from the rule here? It's certainly not the existence of an applicable federal constitutional right. For there is none. See Wainwright v. Sykes , 433 U.S. 72, 86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (rejecting the *1085 notion that "a defendant has a right under Jackson v. Denno to a hearing as to the voluntariness of a confession, even though the defendant does not object to its admission" (citation omitted)).[1] And we have never recognized such a right under any source of Colorado law.
D. The Majority's Reliance on Rediger Is Misplaced
¶51 The majority relies on our recent decision in People v. Rediger , 2018 CO 32, 416 P.3d 893, as a broad game changer regarding plain error review. See maj. op. ¶¶ 9, 17; see also Phillips v. People , 2019 CO 72, ¶¶ 21-22, 443 P.3d 1016. And that it was. But, Rediger did not address whether waiver is implied when a defendant fails to lodge an objection required by rule or statute. See Rediger , ¶¶ 39-47, 416 P.3d at 902-903. Therefore, Rediger is plainly distinguishable.
¶52 In Rediger , the defendant failed to make a contemporaneous objection to an allegedly erroneous jury instruction. See id. at ¶¶ 9-10, 12, 416 P.3d at 898. Defense counsel additionally stated that the "defense [was] satisfied" with the instructions. Id. at ¶ 10, 416 P.3d at 898. Yet, we still concluded that, based on the record, there was no evidence that the defendant "either express[ly] or implied[ly] ... intended to relinquish his right to be tried in conformity with the charges set forth in his charging document." Id. at ¶ 42, 416 P.3d at 902. There simply wasn't enough evidence in the record to establish such an intent, and accordingly, because "we must indulge 'every reasonable presumption against waiver,' " we concluded that the defendant had forfeited his claim, and had not waived it. Id. at ¶¶ 46-47, 416 P.3d at 903 (emphasis added) (quoting People v. Curtis , 681 P.2d 504, 514 (Colo. 1984) ).
¶53 Conspicuously absent in Rediger , however, was a rule like Crim. P. 41(g), which generally mandates that a defendant file a motion to suppress an involuntary statement before trial.[2]
E. Hinojos-Mendoza Should Control
¶54 We saw this type of problem only a dozen years ago in Hinojos-Mendoza v. People , 169 P.3d 662, 665, 670 (Colo. 2007), when we found waiver of a defendant's confrontation right based on defense counsel's failure to file a statutorily required motion challenging the use of certain evidence. In Hinojos-Mendoza , the defendant was charged with intent to distribute cocaine. Id. at 664. A lab technician tested the recovered substances and wrote a report identifying the substance as cocaine. Id. At trial, the People introduced the lab report without calling the technician as a witness. Id. The defendant objected on hearsay grounds. Id. The trial court ruled against the defendant because a statute, section 16-3-309(5), C.R.S. (2006), authorized the admission of the report without the responsible technician's testimony and set out pretrial procedures a defendant would have to follow to question the technician at trial. Hinojos-Mendoza , 169 P.3d at 664-65. In response to questioning from the court, defense counsel admitted that "he had not requested the lab technician's presence because he was unaware of the statute." Id. at 664. On appeal, the defendant argued the admission of the lab report without accompanying testimony from the lab technician violated his Sixth Amendment confrontation rights. Id. at 665.
¶55 We noted that "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." Id. at 669 (quoting United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ). Rights that are personal to the defendant, *1086 such as the right to counsel, the right to testify, the right to trial by jury, are "sufficiently personal and fundamental as to require a voluntary, knowing, and intentional waiver by the defendant himself." Id. (citing Curtis , 681 P.2d at 511 ). But, whether to waive other rights, including the right to confrontation, are strategic decisions that fall to defense counsel to make. See id. Thus, we concluded that defense counsel could waive the defendant's right to confront the lab technician by not complying with the procedural requirements set out in the relevant statute. Id. at 670. And because "we presume that attorneys know the applicable rules of procedure," we reasoned that "we can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue." Id.
¶56 So, where a statute or rule sets forth procedural requirements to challenge evidence with which counsel fails to comply, such failure constitutes an implied waiver of the opportunity to challenge that evidence. See id. Counsel is presumed to know the applicable rules of procedure, and a failure to adhere to those rules creates a basis to infer "that the attorney made a decision not to exercise that right at issue." Id. Contrary to the majority's conclusion, Rediger didn't "supplant[ ]" this analysis. See maj. op. ¶ 17; see also Phillips , ¶ 30. It didn't even address the situation before us now.[3]
F. The Majority's Decision Places an Unreasonable Burden on Judges
¶57 As the majority below observed, our holding today imposes an unreasonable burden on the trial courts:
[T]o require the trial court to hold a hearing on the voluntariness of a defendant's statements where the issue becomes apparent during trial would be overly burdensome and inefficient. Such an obligation could require a trial court in the middle of trial to sua sponte (1) order a new suppression hearing on the issue of voluntariness; (2) declare a mistrial; (3) convene a new jury; and (4) begin a new trial (even where the confession may have been allowed).
People v. Cardman , 2017 COA 87, ¶ 31, --- P.3d ---- ; see also Miller , 814 S.E.2d at 84-85 (outlining potential burdens for the prosecution if plain error review is used in reviewing suppression claims raised for the first time on appeal).
¶58 The systemic implications don't end with the trial courts. Divisions of the court of appeals must now scour the record in far more cases for plain error, even when defense counsel fails to comply with Crim. P. 41(g). All this, when we already have another long-standing rule that can address Cardman's primary concern without so much disruption to our criminal justice system.
G. Cardman's Remedy Is Crim. P. 35(c)
¶59 Rule 35(c) is the proper mechanism for addressing what lies at the heart of Cardman's claim-whether he received ineffective assistance from his trial counsel. See Cardman , ¶¶ 61-63 (Bernard, J., concurring) ("[F]iguring out why defense counsel did not file a motion to suppress is a foundational question ...."). Postconviction proceedings are best suited to handle "situations in which facts outside the record [are] critical" to resolving a defendant's claims. See Moore v. People , 2014 CO 8, ¶ 14, 318 P.3d 511, 517 ; cf. People v. Kirk , 221 P.3d 63, 65 (Colo. App. 2009) ("We are not authorized to make this factual finding in the first instance, and this is not a case in which the record supports but one inference." (citation omitted)). What's missing from the record here is an explanation of why Cardman's defense counsel failed *1087 to challenge the voluntariness of his statements in his motion to suppress-was it a strategic choice or an oversight?
¶60 Furthermore, analyzing claims such as Cardman's through an ineffective assistance of counsel lens rather than plain error could prove more advantageous to defendants. "[T]he error in a claim of ineffective assistance of counsel must impair the reliability of the judgment of conviction to a lesser degree than a plain error in order to warrant reversal of the conviction." Hagos v. People , 2012 CO 63, ¶ 19, 288 P.3d 116, 120-21. "Plain error review allows the opportunity to reverse convictions ... presenting particularly egregious errors, but reversals must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time." Id. at ¶ 23, 288 P.3d at 121-22. And if the harm suffered by Cardman was so great as to satisfy plain error, then it would certainly satisfy the prejudice prong of the Strickland standard for ineffective assistance of counsel. See id. at ¶ 19, 288 P.3d at 121-22 ("Plain error casts serious doubt on the judgment of conviction. Deficient performance of counsel, on the other hand, undermines confidence in the judgment of conviction.").[4]
II. Conclusion
¶61 Cardman waived the challenge he seeks to make here. The majority's contrary conclusion is at odds with Crim. P. 41(g) and our decision in Hinojos-Mendoza . The defendant's potential remedy for counsel's failure to comply with the requirements of Crim. P. 41(g) is found in Crim. P. 35(c). By making factual findings regarding the detective's behavior and decisions by defense counsel, the majority usurps the role of the trial courts.
¶62 For all these reasons, I respectfully dissent.
I am authorized to state that CHIEF JUSTICE COATS and JUSTICE MÁRQUEZ join this dissent.

Wainright analyzed Florida's rule, which is almost identical to Colorado's Crim. P. 41(g). 433 U.S. at 76 & n.5, 97 S.Ct. 2497. As relevant here, Florida Rule Crim. Proc. 3.190(i)(2) sets forth:
The motion to suppress [a confession or admission illegally obtained] shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion or an appropriate objection at the trial.

Moreover, the limited discussion of implied waiver in Rediger is dicta because implied waiver was not at issue there.

And were we to abide by our existing precedent-and hold that failure to comply with the requirements of Crim. P. 41(g) constitutes a waiver, rather than a forfeiture-we would not be alone. See, e.g. , Hernandez v. State , 294 Ga. 903, 757 S.E.2d 109, 110-11 (2014) (holding that a defendant's failure to file a pretrial motion to suppress, as required by statute, resulted in a failure to preserve a claim for appellate review); State v. Miller , 814 S.E.2d 81, 83-86 (N.C. 2018) (holding that plain error review was improper when the defendant failed to timely file a motion to suppress as required by statute, and, thus, the defendant "completely waived appellate review" of his Fourth Amendment claims); Rodriguez v. State , 435 P.3d 399, 408-09 (Wy. 2019) (concluding that failure to file pretrial motions to suppress, as required by Wyoming's procedural rules, without good cause for the failure can constitute waiver).

Crim. P. 35(c) allows defendants to begin the postconviction review process without going through the direct appeal process:
Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth. ...
Therefore, if a speedy remedy is the concern, one at least as speedy as direct appeal remains available. And though there is no Sixth Amendment right to court-appointed counsel for indigent defendants seeking postconviction relief, see Duran v. Price , 868 P.2d 375, 379 (Colo. 1994), district courts have discretion to appoint counsel in Rule 35(c) motions, see Murphy v. People , 863 P.2d 301, 304 n.9.